UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NATALE GUY VACCA,

    Plaintiff,

v.                                           Case No.: 2:18-cv-455-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is the Complaint, filed on June 28, 2018. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB") and his claim for supplemental security income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the Plaintiff unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-.1511, 416.905-.911.

B. **Procedural History**

On March 26, 2012, Plaintiff filed an application for disability insurance benefits and supplemental security income. (Tr. at 367, 371). Plaintiff alleged an onset date of December 19, 2011. (*Id.*). His application was denied initially on June 1, 2012 and again on reconsideration on July 17, 2012. (*Id.* at 123, 145 ). A hearing was held before Administrative Law Judge ("ALJ") T. Whitaker on December 29, 2014 in Fort Myers, Florida. (*Id.* at 70). ALJ Whitaker issued an unfavorable decision on February 6, 2015, finding Plaintiff not to be under a disability from December 19, 2011 through the date of the decision. (*Id.* at 163). Plaintiff requested a review of the decision, and the Appeals Council granted the request, remanding the case for further consideration of Plaintiff's maximum residual functional capacity and directing the ALJ to evaluate the treating source opinion of Dr. Robert E. Tomas and directing the ALJ, if warranted, to obtain supplemental evidence from a vocational expert. (*Id.* at 170-71).

A second hearing was held before ALJ Elizabeth Palacios on October 28, 2016. (*Id.* at 35). ALJ Palacios rendered an unfavorable decision on August 2, 2017. (*Id.* at 21). Plaintiff requested a review of that decision, and on May 17, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1). Plaintiff filed a Complaint in the United States District Court on June 28, 2018. (Doc. 1). This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

C. **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a Plaintiff has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the Plaintiff: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The Plaintiff has the burden of proof through step four, and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2011, the alleged onset date. (*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "osteoarthritis; obesity; hyperlipidemia; gouty arthritis; diabetes mellitus; benign hypertension; and alcohol use." (*Id.* at 13 (citing 20 C.F.R. 404.1520(c), 416.920(c))). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 16 (citing 16 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926)). At step four, the ALJ determined the following as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium exertion, as defined in 20 CFR 404.1567(c) and

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

> 416.967(c), except as follows: every one hour the individual requires a 5 minute break during which the individual would remain on task, in addition to the usual work breaks and lunch time.

(*Id.* at 17).

The ALJ further found that Plaintiff was "capable of performing past relevant work as a Counter Clerk, Automotive Parts" and that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)." (*Id.* at 20). Thus, the ALJ concluded that Plaintiff was not under a disability from December 19, 2011, through the date of the decision. (*Id.* at 21).

**D.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

4

*accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that court must scrutinize entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises two issues. As stated by the parties, they are:

(1) Whether the ALJ erred in finding Plaintiff's medically determinable mental impairments to be non-severe and result in no mental limitations of Plaintiff's ability to work; and

(2) Whether the ALJ erred in failing to consider whether her own findings established a "closed period" of disability (*i.e.*, a period of disability with a definite beginning and ending date) despite her rationale that Plaintiff's condition "improved" to the extent of not being disabled.

(Doc. 21 at 12, 27).

### A. Whether the ALJ Erred in Finding Plaintiff's Medically Determinable Mental Impairments to be Non-Severe and Result in No Mental Limitations of Plaintiff's Ability to Work.

Plaintiff argues that the ALJ erred in finding that his medically determinable depression and anxiety were non-severe and contends that this error had a "ripple effect," leading to a legally insufficient RFC determination. (*Id.* at 13-14). More specifically, Plaintiff argues that the ALJ improperly rejected the three Agency consultative experts' opinions, which included marked difficulties in certain areas, as detailed below.

Dr. Kelly, an Agency consultant, examined Plaintiff on May 14, 2012. (Tr. at 493). As is relevant to this issue, Plaintiff reported difficulty sleeping, depression, anxiety, dysphoric mood, psychomotor retardation, crying spells, feelings of guilt with a diminished sense of pleasure, loss of usual interests, and difficulty with concentration. (*Id.*). Dr. Kelly observed that Plaintiff appeared disheveled and was poorly groomed, that his gait was notable for shuffling, that his posture was slouched and motor behavior lethargic, that his eye contact was appropriate, that his mood was dysthymic, that his attention and concentration appeared to be impaired due to

5

symptoms associated with depression, that he was able to complete a simple counting exercise and perform simple calculations but unable to complete serial 3's accurately, that his memory was impaired due to symptoms associated with depression, and that his recent and remote memory was impaired due to symptoms associated with depression. (*Id.* at 494-95). Dr. Kelly noted that Plaintiff reported that his wife assisted him with activities of daily living due to a lack of motivation and that he did not socialize or have any hobbies or interests. (*Id.* at 495). Dr. Kelly opined that "[w]ith regard to his vocational capacities, he can follow and understand simple directions and perform simple tasks independently" and that "[h]e has marked difficulties performing complex tasks independently" and "marked difficulties maintaining attention and a regular schedule." (*Id.*). She also wrote that "[h]e is able to learn new tasks" and "make appropriate decisions" but that "[h]e may have marked difficulties relating adequately with others and marked difficulties appropriately dealing with stress." (*Id.*). Dr. Kelly opined that "[t]he results of the examination appear to be consistent with psychiatric symptoms that significantly interfere with the claimant's ability to function on a daily basis." (*Id.*). She diagnosed him with major depressive order, chronic pain, and gout and noted that he had limited access to services. (*Id.*)

On June 1, 2012, Dr. Hudson, a non-examining Agency consultant, opined in relation to Plaintiff's mental RFC that Plaintiff was moderately limited in the following areas: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; and (4) ability to interact appropriately with the general public. (*Id.* at 108-09). Dr. Hudson opined that Plaintiff could understand and remember simple, and some moderately detailed, instructions, could carry out

simple, and some moderately detailed, instructions, and could related adequately with others in low social demand settings. (*Id.* at 109-10).

On July 13, 2012, Dr. Giardina, a non-examining Agency consultant, also opined with regard to Plaintiff's mental RFC that Plaintiff was moderately limited in the following areas: (1) ability to understand and remember very short and simple instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (5) ability to interact appropriately with the general public. (*Id.* at 141-42). He found that Plaintiff could understand and remember simple, and some moderately detailed, instructions, could sustain concentration, persistence, and pace for simple tasks, and could relate adequately with others in low social demand settings. (*Id.*).

In determining Plaintiff's mental RFC, the ALJ gave the Agency consultants' opinions light weight and rejected their opinions regarding Plaintiff's mental limitations. (*Id.* at 14-15). She found that the opinions were rendered almost five years prior to the decision and that Plaintiff had failed to obtain mental health treatment from 2014 through 2016, "including no prescription medication from his primary care treatment provider." (*Id.*). The ALJ also noted that Dr. Kelly had examined Plaintiff on only "one occasion close in time to the event that triggered his psychiatric symptoms." (*Id.* at 15). Moreover, the ALJ found that the Plaintiff's mental status exams during the relevant time period were generally unremarkable and typically normal. (*Id.* at 14-15)

Plaintiff argues that the ALJ's rationale for rejecting the Agency experts' opinions, *i.e.*, that the opinions were too remote and that Plaintiff failed to obtain mental health treatment, is

legally insufficient. (*Id.* at 17-18). First, he contends that "the ALJ's reasoning fails basic Agency principles for duty to develop in light of Plaintiff's lack of medical insurance and funds to obtain treatment." (Doc. 21 at 19). That is, the ALJ should have ordered a further consultative examination or a review of the updated record. (*Id.*). Second, Plaintiff argues that the ALJ failed to properly acknowledge that he was unable to obtain mental health treatment due to a lack of health insurance and due to an inability to afford treatment from his mental health provider. (*Id.*). Moreover, Plaintiff argues that the ALJ failed to acknowledge or discuss the fact that each opinion on Plaintiff's mental limitations were consistent. (*Id.* at 20). Plaintiff contends that the ALJ's error is not harmless because it led to a legally insufficient RFC and the failure to include mental limitations "creates a potential outcome determinative analysis in that the ALJ would be required to evaluate the effect of Plaintiff's mental impairments on his ability to perform skilled work." (*Id.* at 22).

When weighing medical opinion evidence, an ALJ considers numerous factors, including the examining relationship, the treatment relationship, and the extent to which the opinion is supported or consistent with the record. 20 C.F.R. § 404.1527(c). An ALJ may discount a medical opinion that is conclusory or inconsistent with the record or when the evidence supports a contrary finding. *Id.* Moreover, while medical opinions about a claimant's abilities are relevant evidence, they are not determinative, and assessment of the RFC is the responsibility of the ALJ. 20 C.F.R. § 404.1527(d).

Here, substantial evidence supports the ALJ's finding that Plaintiff's mental impairment was non-severe. As a preliminary matter, the Court finds no merit in Plaintiff's claim that the ALJ's temporal-proximity rationale was error because the ALJ also relied on other, more recent medical records that, while generally reflecting Plaintiff suffered from mood or affect

abnormalities, did not reflect these mental impairments would interfere with his ability to perform basic work activities. (Tr. at 556, 563-68, 571-77, 595, 597, 602-03, 607-08, 612-13, 618-20, 635-37, 649, 656-57, 664-65, 671-72, 676, 682-83, 692-93). Even if, *arguendo*, this was error, any error would be harmless for the reasons explained below.

First, the ALJ adequately acknowledged Plaintiff's claim that he could not pursue mental health treatment due to a lack of insurance and an inability to afford treatment and simply found the claims were not credible. (*See* Tr. at 17-18). As noted by the ALJ, although Plaintiff did not go back to his mental health provider because he could not pay the bill, he did continue to obtain treatment from a primary care physician on multiple occasions during this time period but failed to pursue mental health treatment with the primary care provider. (*See id.* at 49-53). When pressed by the ALJ as to whether he sought mental health treatment or medication from his primary care physician, Plaintiff testified that he did not because he wanted to go back to his previous mental health provider but was unable to because he did not have the time or money to get there. (Tr. at 49-51). The ALJ's decision reflects that she found it relevant that Plaintiff failed to obtain treatment from his primary care provider during this time period despite his alleged severe mental health impairments. (*See id.* at 14, 15).

Second, to the extent Plaintiff asserts the ALJ improperly substituted her opinion for that of the medical experts, substantial evidence supports her decision to assign the decisions little weight. As non-treating doctors, the ALJ was not required to defer to their opinions. *Beegle v. Soc. Sec. Admin.*, 482 F. App'x 483, 488 (11th Cir. 2012) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Moreover, the Court finds that the record supports the ALJ's determination that these opinions were inconsistent with the medical record. In determining that Plaintiff's mental impairment of affective disorder caused no more than minimal limitations in

9

his ability to perform basic mental work activities, the ALJ considered the four broad areas of mental functioning delineated in 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Paragraph B criteria"). Specifically, the ALJ determined that Plaintiff had no more than mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. at 13-14). These determinations were supported by (1) Plaintiff's daily activities, including reading, watching television, taking walks and drives, (*id.* at 13-14, 459-65); (2) his self-reported ability to follow spoken instructions, go out alone, and get along with authority figures, (*id.*); (3) Dr. Kelly's report noting that Plaintiff was fully oriented and demonstrated appropriate eye contact, coherent and goal-directed thought processes, adequate expressive and receptive language, and no evidence of psychosis, (*id.* at 494); (4) a December 2015 mental status exam finding that he had good judgment, that he had normal mood and affect and was active and alert, that he was oriented to time, place, and person, and that his recent and remote memory were normal, (*id.* at 683); (5) a July 2016 mental status exam making similar findings, (*id.* at 692-93); (6) and numerous other mental status exams that, while noting some abnormalities in mood/affect, were typically unremarkable during the relevant time period, (*id.* at 556, 563-68, 571-77, 595, 597, 602-03, 607-08, 612-13, 618-20, 635-37, 649, 656-57, 664-65, 671-72, 676, 682-83, 692-93). As such, the ALJ's finding was supported by substantial evidence. The Court now turns to the second issue.

> **B. Whether the ALJ Erred in Failing to Consider Whether Her Own Findings Established a "Closed Period" of Disability (*i.e.*, a Period of Disability with a Definite Beginning and Ending Date) Despite Her Rationale that Plaintiff's Condition "Improved" to the Extent of Not Being Disabled.**

Plaintiff next argues that the ALJ failed to consider whether he qualified for a closed period of disability. When making a determination relating to a closed period, the decision

maker determines whether the claimant is entitled to disability benefits for a finite period of time that starts and stops prior to the date of the decision. *Sandlin v. Colvin*, No. 5:14-CV-1885-MHH, 2016 WL 4820785, at *3 (N.D. Ala. Sept. 14, 2016) (citing *Mitchell v. Comm'r of Soc. Sec.*, 393 F. App'x 651, 652 (11th Cir. 2010)). To have a closed period considered, a claimant must have an impairment that: (1) prevents substantial gainful activity for at least 12months; (2) continues to or through the month of filing; and (3) ceases in or after the month of filing, but prior to the date of adjudication. *Harvey v. Astrue*, No. 3:08-CV-455-J-25MCR, 2009 WL 2634399, at *8 (M.D. Fla. Aug. 24, 2009). Thus, a claimant must establish a consecutive 12-month period of time in which he is unable to engage in substantial gainful activity. *Id.* When an ALJ determines that a claimant is not disabled at any time during the period from his alleged onset date to the date of the hearing and this decision is supported by substantial evidence, then the ALJ has not erred in failing to consider a claimant's eligibility for a closed period of disability. *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772-73 (11th Cir. 2006).

This issue involves Plaintiff's alleged disability arising from abdominal injuries and hernias. In December 2011, Plaintiff suffered stab wounds to the abdomen and immediately underwent surgery. (Tr. at 531-35). The record reflects that Plaintiff developed a hernia in 2012 and underwent hernia surgery in August 2012. (*Id.* at 551). Plaintiff developed a second hernia in 2013 and underwent a second hernia surgery in May 2014. (*Id.* at 627). In addressing Plaintiff's claim of disability, the ALJ relied on several medical source opinions issued between December 2011 and May 2014, some of which reflected normal abdominal exams. She also relied on Dr. Tomas's May 2013 opinion, in which he opined that Plaintiff should not lift heavy objects or work until his hernia was repaired. (*Id.* at 13). She gave partial weight to Dr. Tomas's

11

opinion and found that lifting restrictions were appropriate when Plaintiff had an active hernia but not after his second hernia repair. (*Id.*).

Plaintiff argues that the ALJ should have considered whether he qualified for a closed period of disability spanning from December 2011 to May 2014 because, according to Plaintiff, the ALJ found that a lifting limitation was appropriate up until his second hernia surgery in May 2014. (Doc. 21 at 28, 32). However, the ALJ's finding was actually more nuanced. In determining that Plaintiff's injuries were non-severe, the ALJ noted that while Plaintiff suffered abdominal injuries and hernias during that time span, "after being stabbed, the [Plaintiff] recovered well from the initial repair surgery" and that his exams included "routinely normal abdominal exams except *when hernias were present*." (Tr. at 13 (emphasis added) (citing exhibits 9F/2-3, 5, 8; 10F/12, 20; 14F/11, 19, 26)). Thus, to the extent Plaintiff argues that the closed period of disability was from the alleged onset date through his May 2014 surgery, Plaintiff's argument fails because the ALJ considered the relevant medical evidence for that time period and her findings in that regard are supported by the record, which reflects that Plaintiff did not suffer from a hernia for the entire time period Plaintiff alleges constitutes a closed period of disability. *See Jones*, 181 F. App'x at 772-73.

To the extent Plaintiff's argument could be read to say that there was a discreet 12-month period of disability within that timeframe, it is Plaintiff's burden to "sufficiently provide [the Court] with the specific 12-month time period for which [he] believes [he] is entitled to a closed period of disability." *Id.* However, Plaintiff has not provided a specific 12-month period within the December 2011 to May 2014 timespan during which he alleges he was disabled.

Accordingly, the Court finds that the ALJ did not err in failing to consider whether Plaintiff qualified for a closed period of disability.

**III.    Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and that the decision was decided upon proper legal standards.  Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 17, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties